## Case No. 14,291.

### TWO HUNDRED AND EIGHTY-TWO BALES OF COTTON.

[Blatchf. Prize Cas. 302.] 1

District Court, S. D. New York. Dec. 30, 1862. 2

PRIZE—LOCALITY OF CAPTURE—COMBINED ACTION OF LAND AND NAVAL FORCES—ENEMY PROPERTY.

1. It is no legal ground of objection to the jurisdiction of the court in a prize case that the arrest was made out of its territorial authority.

2. The court has jurisdiction, under the law of nations and by municipal law, when the subject-matter of the suit is prize of war, without regard to the locality of the arrest or cause of action; and it is unimportant to the question of prize or no prize whether the capturing land and sea forces act in conjunction or separately.

3. Where a combined action exists between vessel-of-war and land forces in making a capture, it is usually cast upon the latter to prove that their co-operation was direct and positive, to authorize their sharing in the prize, and they are not ordinarily recognized as joint captors unless it is proved on their part that the capture was produced by their active interference.

4. The prize court has cognizance of all captures in an enemy country made in creeks, havens, and rivers, when made by a naval force solely, or in co-operation with land forces.

5. The property in this case, consisting of cotton, rosin, staves, and planks, having been captured by the naval forces of the United States during the year, in the attack on Newbern, N. C., and being enemy property, employed at the time by the enemy in aid of hostilities against the United States, by being used in building fortifications, was condemned as prize of war.

In admiralty.

BETTS, District Judge. The above merchandise was brought into this port from Newbern, N. C., on board the schooner Napoleon, and was here arrested as prize, under process of attachment returned into court July 8, 1862. The claimants, Dibble & Brothers, intervened and filed their claim and test affidavit July 22, 1862, as to the rosin described in the libel, and deny the jurisdiction of the court in the cause. The cause is now submitted to the court for decision upon the proofs put in, and the briefs in writing of the counsel for the libellants and claimants, and upon the default of all the other parties in the suit. All the property was arrested and taken into possession by the naval forces of the United States at the capture of Newbern, in March, 1862, by the co-operation of those forces with the army of the United States in the attack and subjugation of that place and the seizure of the property claimed as prize. It is no legal ground of objection to the jurisdiction of the court that the arrest was made out of its territorial authority. The court has jurisdiction under the law of nations, and by municipal law, when the subject-matter of the suit is prize of war, without regard to the locality of the arrest or cause of action,—2 Stat. 759; 1 Kent, Comm. 357; Act Aug. 6, 1861 (12 Stat. 319); Upt. Mar. War & Pr. c.

1 [Reported by Samuel Blatchford, Esq.]
2 [Reversed by the circuit court. Case unreported.]

6, 2d Ed.; and it is unimportant to the question of prize or no prize whether the land and sea forces act in conjunction or separately. Those are questions relative to the distribution or appropriation of the prize property, and do not necessarily, as to third parties, enter into the determination of the right of capture. This capture was made by vessel-of-war conducting warlike operations within the territorial limits of the state of North Carolina, on navigable waters, and the place of attack was approached by the fleet and army, waterborne from the high seas. The location became such that each arm of the public force might act severally in its appropriate sphere, or they might co-operate in action. Where a combined action exists between ships-of-war and land forces in making a capture, it is usually cast upon the latter to prove that their co-operation was direct and positive, to authorize their share in the prize, and they are not ordinarily recognized as joint captors unless it is proved on their part that the capture was produced by their active interference. Hal. Int. Law, c. 30, § 15; 2 Wheat. [15 U. S.] Append. 65. It seems admitted by Chancellor Kent to be the clear rule of prize law that the prize court has cognizance of all captures in an enemy country made in creeks, havens, and rivers, when made by a naval force solely, or in co-operation with land forces. 1 Kent, Comm. 357; The Emulous [Case No. 4,479]. This court has, in several instances, adopted the like rule, as applying to captures made in bays, inlets, and sea communications, within various rebel states. This case does not call for more than a recognition of the principles upon which like seizures have been adjudged in this court, during the present war, to be prize captures, because it is not now designed to extend these references to a full argument, comprehending all the debatable points attending the subject. The witnesses examined before the prize commissioners in this suit were Edward L. Haines, acting master in the United States navy, Ferdinand Crocker, captain of the army gunboat Hussar, and John West, captain of the gunboat Chasseur. The acts which they witnessed or in which they participated, were not performed for the purpose of capturing the property in question. Those witnesses disclose where the prize property was seized and under what circumstances it was taken. The same witnesses are sworn in nine several suits, which are prosecuted for the collective merchandise seized. The suits are only discriminated by the names of the vessels employed to transport the property from the place of capture to this port for adjudication, and the evidence has no relation to its situation afloat anterior to the warlike attack upon Newbern, but is limited to the actual taking of the merchandise libelled. Mr. Haines testifies that he was present at the attack upon Newbern, and the capture of that place, March 14, 1862, by a naval squadron under the com-

mand of Commodore Rowan. The navy took possession of the town, and the crews were placed about the town in various positions, and were employed by the commodore to carry the naval stores across the river into the town, and secure them there. The witness was assigned by the commodore to take charge of such stores, and to hold them for the government, or to place on the several parcels the mark "U. S. N." The entire property was transported to New York on various vessels, as means therefor could be procured. A great part of the cotton and rosin seized had been employed in building fortifications in defence of the town, and the residue was owned by citizens of Newbern, who aided the Rebellion by every means in their power, and who are still in the Confederate army. Cannon were mounted by the enemy behind those defences, and there the enemy defended the place on the attack by the United States forces. Armed resistance was made to the taking of the town, and many guns were fired on both sides. The capture of the place was made by the flag-ship Philadelphia, and the other ships of the navy assisted her. This witness was on board one of the armed vessels, and was engaged in the action. He says he is well assured that the entire property seized was the manufacture or production of Newbern. The place was, prior to the capture of this property, in a state of armed insurrection, as was notorious to all, until it was captured, as above stated. Two of the brothers Dibble are now in the Confederate army. The same leading facts are stated by the other two witnesses who were examined. No one intervenes for the other property named in the libel and monition, and judgment by default was rendered against the two hundred and eighty-two bales of cotton, the two thousand white oak staves, and the quantity of yellow pine planks proceeded against in the suit. This property having been all captured during the war, and being at the time employed by the enemy in actual aid of hostilities waged against the United States, and being enemy property, it is decreed to be subject to condemnation and forfeiture to the libellants.

This decree was reversed, on appeal, by the circuit court, July 11, 1864, for want of jurisdiction in the district court.

[Subsequently a bill of charges for services rendered under the official employment of the officers of the court was allowed. Case No. 14,-292.]